Good morning. My name is David Kurtz. I'm counsel for the appellants, David L. Kurtz PC, and David Kurtz individually. I'd like to reserve three minutes for rebuttal if I may. I'm mindful of the fact that I'm completely free. The case we're here for today involves, sadly, 10 years of litigation fraud by Goodyear's enterprise in its effort to conceal the defective nature of its G159 tire. The enterprise is big, as a matter of fact. It includes Goodyear's legal department, its inside counsel, its outside counsel, Goodyear engineers, Goodyear internal experts, outside experts, all working for the common purpose to conceal this defective data, which would show that the tire was not safe or suited for the roadway. The case started with Hager 1 in 2006, a product liability case, sought to prove the tire was defective when used on motorhomes. It started out as a pickup and delivery tire, a stop and go for the city. Hi, Mr. Kurtz. I think we're familiar with the facts of the case, and so perhaps you could focus on the issue, the main issue before us, which is when the claim accrued, and the opposing counsel says that claim accrued when you brought Hager 2 because it charged Goodyear with failing to disclose all of the information that you're now saying is part of your case here. I'm glad to address it for you, Your Honor. It wasn't until 2015 that Goodyear finally revealed the thousands and thousands of G159 failures in responding to a court order. That led to the almost immediate settlement of Goodyear, and I was excluded from that settlement so I could pursue my revenue claim separately. The district court ruled that the claim accrued in 2013 when I filed Hager 2. Hager 2 was the case that sought to get the difference in settlement value as a result of Goodyear's deceptions regarding test staff. The court's reasoning was that I knew I'd be spending money in Hager 2 pursuing Goodyear, and that I had to hire additional counsel to help, and therefore he reasoned that I knew of the time. The court's error is that the law requires me to discover not only that Goodyear had done something wrong, but that what it did wrong was causing me damages, and I simply had no idea. Counsel, counsel, I'm reading opposition to the motion to dismiss page 70 of 103 and use Hager 2 was settled in January 2017. Only then could plaintiffs have determined the cause by Goodyear's conduct after crediting all Hager-related contingent fee recovery and other revenue sources. But why, with the fact that you weren't certain of the exact amount of your damages, is it that that date would trigger the discovery rule as opposed to when you were aware you had a claim? Why do you have to know all of your damages before the statute starts running? First of all, I agree with you. You don't have to know all your damages. My damages are continuing as we speak. So certainly that was not the date of all damages. But the Supreme Court decisions in Arizona said that when you have litigation pending and it could lessen or minimize, lessen or eliminate damages, the claim will not accrue until then. And when the case was settled in 2017, Supposing counsel suggests that a case was limited to malpractice, is that not correct? Yes, Your Honor. It's the rule in both Glaze and Ampac in the Supreme Court had to do with misconduct during the course of litigation. For our purposes, misconduct during the course of litigation, like we've seen repeatedly in Goodyear, strikes me as the same, that you can't figure out how you've been damaged or if you've been damaged at all until the claim ends. For instance, not only did the claim resolve all of the Hager's claims, but it could have just as easily resolved mine. Had Goodyear decided to address it. So counsel, in your view, even today, the statute of limitations hasn't even started running? No, I believe the statute of limitations accrued on one of two dates, Your Honor. It either accrued on September 29th, 2013, when Goodyear finally disgorged the thousands of failures it had willfully been lying about and concealing for a decade. That's the earliest it could have accrued or accrued if you follow the Supreme Court's reasoning when the case was settled because that was the opportunity to bring it to a termination and either lessen or eliminate my damages. So it's one of the two, but either way, the complaint was timely filed on August 1st, 2018, because that's the earliest that Goodyear disclosed the data that showed not only the tire was defective, but as the complaint asserts, and that's what we're here to look at the allegations and the complaint, the tire was indefensible based upon. I'm sorry, counsel, I missed something there. You said one of the dates the claim could have accrued was in 2013, but that made the complaint filed in 2018 within the four-year statute of limitations. I said that I misspoke, Judge. I meant the earliest it could have accrued would have been September 29th, 2016. That is the day Goodyear identified that there had been 98 people killed or wounded from motorhomes, accidents, 600 property damage claims, and it was the earliest that that data became aware, and it was the earliest date that you could reasonably conclude that the tire would be indefensible. I know later when the next- So each additional piece of information that Goodyear disclosed, would you say that that starts the statute running or in each case, or is there something different in kind about this information? Because I believe the district court imposing counsel says, you knew that there was a failure to disclose. You knew that by 2013 when the Hager 2 was brought. Why is this data different in kind? So that's an independent injury, and I'm having trouble understanding that as well. I think the easiest way to look at it, Your Honor, is when we were requesting failure data, and it's a communication. It's Goodyear had a story to tell us. It turned out it was deceptive, but there was no way until September 2016 that I knew what we were talking about. It could have been six failures from hitting nails in the road. As it ended up to be, it was thousands and thousands of failures in a high-speed application. So it was, you know, that's when you knew that the tire had problems unheard of. Mr. Kurtz, if I might, let me see if I can carve through this. It seems to me that you're saying that it's when you got what I'll call the claims information that starts the statute with respect to you alone, and that the test information, which was the information that was disclosed as of 2013, was the material that was relevant to your clients, to the Is that the bright line that you're trying to delineate? Sure. Well, what happened, Judge, is when the test data frauds were disclosed, Judge Silver made clear in her opinion that Goodyear felt it could defend those test data frauds. And as the complaint makes clear, as long as the failure data didn't come out. So when I started Hager 2, I knew I was going to be spending money pursuing a claim that Goodyear felt it I had no idea that what it was concealing, if disclosed, would render the G-159 indefensible. Isn't that then a question about the degree of your damage, not the character of your damage? I mean, for example, you don't get to claim your client's attorney's fees, their attorney's fees. They were settled earlier on. And now we're trying to find what is distinctive as to your damage in this case that you wouldn't have known of as of 2013. And, you know, the findings, you identify them and you're in the brief in the complaint is that Goodyear misrepresented to the court that it had responded to the discovery. That's the essence of the claim. And that applies to you as well as them, doesn't it? Well, Your Honor, I mean, I wrote down a list of the trailing deceptions. You know, one of the things you guys took notice was of Goodyear's Act 5. It is a 263 paragraph factual tutorial that lays out the fraud in precise, minute detail, which is misrepresentation after misrepresentation, after false filing, after deceptive testimony. But my damage claim, so that I'm clear about it, Your Honor, it is all I'm all this case is my net revenue losses for 10 years of wasted time. When after Goodyear settled the case, it credits revenues from all sources in my business, every dime from every source from the haggers. It is just my pure, simple net revenue loss for 10 years of wasted litigation. Counsel, could you could you explain to me how under Rico, those damages are recoverable as you're being damaged in your business and property, as opposed to sort of, you know, a collateral impact from the damage that may have been caused to your clients? How does Rico allow you to recover those kinds of what I would think of as indirect type damages? Yeah, Your Honor, first of all, I draw the court's attention to I believe it's the Harmony case, which says there can be more than one direct victim of a Rico scheme. And the complaint in its factual assertions, which are deemed to be true, asserts and it is true that Goodyear scheme was directed at me and other lawyers. And the reason why is, you know, the victims of these things, they don't do work. The whole idea is to wear people out. And the complaint asserts that Goodyear's endeavor was to financially exhaust me. And here I am 10 years later, suffering those very room, very, I mean, those very... But counsel, what I see in your amended complaint, like, for example, paragraph 68, that the accident omissions directly interfered with your capacity to accept additional cases and cause a loss of revenue, because you had to devote more time to this case. What would be your best Rico case that you think stands for the proposition that that's the type of damage that's recoverable under Rico? The scheme as put in the amended complaint was directed at me, designed to financially exhaust me. It caused me business and property damages by a loss of revenue that has nothing to do with whether I could or do or miss cases or how much they were worth. The fact is, I was inundated completely. This case is massive. Hundreds and hundreds of thousands of documents, thousands of pleadings, multiple appellate tours, it ate my office alive. And that was the intent of Goodyear. And so it only seeks, it's a simple calculation judge, here's the historical revenue of the firm. Here's the revenue during the good, the years of Hager, crediting revenue from all sources, what's the next loss, juxtapose a bit against years of historical earnings. So it's a pretty simple thing. But it means that direct damage concept, you know, there was nobody other than me, who has standing to pursue my business revenue losses, certainly the Hagers couldn't do it. It's damaged, it's not particularly complicated to figure out. And there's a third tier of that that is escaping me. I thought I wrote it down. But there's another aspect of it that escapes me. But those were three requirements that the Ninth Circuit sites. Ah, my claim fits squarely with it within them. It's directed to me, nobody else can do it. And in its absence, there's nobody to vindicate it. You know, this is a unique situation. Want to save some time for rebuttal? Oh, to 142. Thank you, Your Honor. I miss that. I'd like to preserve the rebuttal time. Thank you. All right. We'll hear from the other side. Ms. Freeman, I think you're still on mute. Has the host unmuted me now? No, you're on. Okay, good. Thank you, Your Honor. Susan Freeman on behalf of the Goodyear Tire and Rubber Company. This is indeed a unique case. This is the first case that we have ever been able to see where post-settlement, where the clients release their claims, including claims with respect to discovery. The plaintiff's lawyer sues the opposing client, saying that this case took too long, his contingency fee's not as lucrative, because he had to bring in other people, and it just cost too much money. But to reverse... Ms. Freeman, can I just ask you the mirror image of the question I was asking your friend, which is, let's assume that all of the damages with respect to the clients are liquidated. They've all been taken care of. But then there's some residual damage with respect to Mr. Kurtz. Mr. Kurtz says it's revenue damage for 10 years, for some time. But it's distinguishable damage of some sort. If that's the case, then doesn't it start to run again in 2016 when you make the disclosure? At least in 2016 when you make the disclosure? It does not, Your Honor. Not only is there no cause of action, and we'll get to that, but with respect to the running of the cause of action, it starts whenever there are ascertainable damages. It doesn't start again when some additional damage accrues. It's when there are ascertainable damages. And Mr. Kurtz alleged that in his complaint in Hager 2. He alleged the damages... If I may, he alleged those with respect to his clients. He didn't allege them with respect to himself. And what I'm trying to do to understand this more clearly is make the assumption that those damages are separate. Now we have to deal with Mr. Kurtz's damage. And of course, the question of causation was not fully developed by the district court because it went on or off on a statute of limitations. Let's assume that he has those damages. They are not ascertainable, are they, until the Hager 2 litigation is settled? But in the Hager 2 complaint, in the Hager 2 complaint itself, he is saying that there was information that was not disclosed, and that included test data and also included failure data. He alleged both in the Hager 2. And he alleged that those caused the tire to be indefensible. And that is exactly the same thing that he's alleged in the Kurtz complaint. So he's alleged that there was damage from the non-disclosure of the failure data and from the non-disclosure of the test data, and that that rendered the tire to the point that it was indefensible. I thought I had turned it all off. You should impose a $500 fine on whoever just called you. Yes, I'm so sorry. But the point is, those damages, the causation is the same as to his clients. Is that the question? Is it causation? Is it simply that you know it's out there on the horizon? To what degree does it have to be liquidated at the time that this was understood? He certainly knew, Your Honor, that he had... If I may, I'm sorry to keep interrupting. But the question, I suppose, for me is, what's speculative? What does it mean in this context? I'm sorry? What does speculative damage mean in this context? Your Honor, I think the only allegation that was made, certainly in the original response to our motion to dismiss, was just that he didn't know the final amount of the damages because he had the offsetting contingency fee recovery that he would be alleging. So the arguments with respect to not knowing about failure data are, in the first place, waived and just reviewable under the motion for reconsideration standard, as opposed to the original standard for just responding to a motion to dismiss. But even if it wasn't waived, we know he knew that he was bringing in additional co-counsel. In fact, in July of 2013, he engaged additional co-counsel. That's shown at excerpt of Record 92. So shortly after he filed the Hager 2 complaint, he brought in additional co-counsel to pursue this. So he knew that he was incurring additional fees. He knew that he was incurring exactly the kind of damage that the court found in commercial union. Defense costs in the underlying case, those are damages that are known to be accrued. You may not know the final amount, but you know that you are accruing damages and that's enough under commercial union and also under the Knightbrook case. It's just that the fact that you don't know the final amount is not sufficient as the court held in commercial union. So that's really the law in Arizona. The Glaze case from the Arizona Supreme Court reaffirmed that. Certainly in a case that's not a malpractice against one's own attorney that is in a litigation malpractice context. But let me note here as well that when Mr. Kurtz points to language in the MFAC case where the court said the damages may be considerably lessened or possibly eliminated, that language has never been cited or never been followed since in Arizona. In every single case we've been able to find, not just ones that cite MFAC, lessening of damages does not do the trick. They have to be subject to elimination. Elimination in the form of either an appellate decision where the plaintiff wins on appeal and therefore wasn't damaged at all or the plaintiff loses for a reason that his counsel's negligence would not affect. So he would have lost in any event. In either case, the later appeal can determine a lack of causation that damages are still occurring. You're still incurring the legal fees and costs and hiring counsel exactly the same as in the commercial union case. It's just that you don't know the causation for sure until you have a determination at the appellate level when you're in a malpractice litigation case. But that's not what we have here. Does that mean then that the discovery rule is simply that you can identify that you've suffered an injury? Yes, I suffered an injury that was caused by this particular negligence or malpractice. Yes. But that is what the discovery rule means, just that you have knowledge that you're subject to an injury no matter what the damages would be from that injury? The amount of the damages expressly doesn't matter as the court set forth in the commercial union case. And if you have damages that would be subject to offset from another source, that would be the Glaze case, I'm sorry, the Coffman case, where that is simply not enough to stop the damages from accruing, to stop having notice of the damages to start the statute of limitations period running. Back to the end of the question of what does speculative mean here? It doesn't mean liquidated, obviously. It doesn't mean capable of being calculated at a later point, but it means something beyond the discovery of an injury or a harm. Yes, something that is an ascertainable damage that you can determine. And as I said in commercial union, also in the Knightbrook case, the courts specifically say that hiring counsel, here it's hiring additional counsel, but hiring counsel and incurring legal fees is sufficient to start having some ascertainable damages. And here we have a situation where it is not a professional malpractice case, and here the damages are just his offsetting amount of fees that he would be getting from his client through his contingency fee agreement. Let me get back to also the negligent cause. I understood opposing counsel, right, because it was an argument that the nature of the negligent cause changed in that opposing counsel says, well, previously we just thought that Goodyear had misrepresented or deceived in some minor amount, but then subsequently it turned out that the nature of the game and it was only once we disconnected the whole scope of the negligence that the cause of action should accrue. What's your response to that? Three points, Your Honor. First, that was waived because it was not argued in response to the motion to dismiss and instead only raised in the motion for reconsideration. Second, he did know that that information was there. If you look to the Hager II complaint, paragraphs 45 to 48, 63 to 92, 37 to 56, he said that there were countless reported tread separations involving the G140 and 59, countless reported bodily injury, additional property damages claims. The test data and the failure data were showing that he did not know exactly what was in that data, but he did know that there was something there that he was trying to get to and information he was trying to obtain. The court in the Hager I case declined to allow all of that other failure data from other similar incidents, but he did know that it was out there. And as the court said in the Coronado case, just a suspicion of fraud is enough to start the statute of limitations on a fraud claim, which is part of what he is alleging here. He was saying that the injury, that the cause of action is the concealed defective nature of the tires. The failure data is just the data that comes back from reports by dealers of customers coming in with complaints about tires. And then the test data is the data that is the manufacturer's testing to, you know, meet regulatory standards and to meet its own standards. But those are all, they're the same information, or I'm sorry, they're information about the nature of this tire. And it's just an additional kind of information, but it's not different in the sense that it would start an entirely new cause of action. The cause of action that's alleged in this complaint is that the whole purpose was to advance Goodyear's interests by evading liability and obstructing justice. The purpose was alleged to be that it's really not a purpose that's intended to hurt him. And in fact, your honors, if the court looks at the complaint, the only paragraph out of 229 paragraphs that alleges an intent to hurt Mr. Kurtz is paragraph 39 of the complaint. And it says, I'm sorry, the amended complaint, while Goodyear expected his scheme to evade hundreds of billions of dollars of liability and sacrifice customers, Goodyear knew and intended its conduct would damage plaintiff's business and property interests. That is the only one where he said that there was an intent to hurt him. And that's really a broad conclusory allegation. It wouldn't meet the Iqbal and Twombly standards. The same complaint alleges that Goodyear's purpose began actually two years before the Hager 1 complaint was filed back in 2003, when Goodyear allegedly first started to try and hide this information from the public to protect itself from liability. And really, this is just an allegation, that conclusory broad allegation is not enough to save him from the statute of limitations that is evident on the face of the Hager 1 complaint compared to the Hertz complaint. I would note with respect to the RICO claims that the court was noting that, again, the purpose was allegedly to protect Goodyear's interest from liability, not a purpose to hurt him individually. This purpose started long before him. And the effect on him was really an intangible right, an intangible right to try and go get additional business, to try and make more money from his clients. There may be a property right in the sense of a contingent fee contract, but that's not a tangible right. That's not such intangible. And that's what the Kelly case from is that it must be an intent to deprive someone of intangible rights is not enough for a RICO violation. And merely being an incidental byproduct of this attempt to hurt consumers and protect itself from having liability to consumers is not enough for a RICO violation. He also argues about the Last Predicate Act. I would note the Clore case, KLEHR, rejected the Last Predicate Act case and the Grimmett case. You're running out of time. Please wrap up. I am. Thank you, Your Honor. We would ask that the court affirm the ruling below dismissing the case with prejudice. Thank you. You did. Thank you, Your Honor. The court fails to give credence to other allegations of harm directed at me in the amended complaint. Paragraph 66 says Goodyear knew that its deceptions would cause Kurtz to spend thousands of hours of work unnecessarily. Paragraph 115 says Goodyear's disclosures revealed Kurtz was required to incur 10 years of time unnecessarily, and Goodyear knowingly caused that. Finally, paragraph 157, which is in the complaint, says if Goodyear had been honest and forthcoming, complied with its obligations, all of this would have been disclosed in 2006. Hager 2 would have been unnecessary as it would have been. She was talking about accrual of the damage claims, and the damage claims couldn't have occurred when we had hired counsel. I didn't know about the failure data. I didn't know I was spending money for that. I was spending money knowing that I was pursuing a testing. I had no way of knowing of these vast frauds. And if I had assumed then it would have been speculative to the court's point because I had no idea of the cause of damage. That case just gets dismissed as speculative. I had no idea that I was unnecessarily spending thousands of hours. And commercial union, the court should know that it said that incurring fees does not cause the case to accrue. The matter should be reversed. I appreciate the court's time. The motion to dismiss also, I mean the motion for reconsideration also abuse the court's discretion and represents manifest error. I thank you. I think the case of David Church versus Gideon Tyron Marblewood Company is submitted. We have two cases that are submitted on the briefs. Thomas Kennist versus Metropolitan West Asset Management LLC is submitted. And Alex Antonio Vasquez-Gonza versus William Barr is submitted. And we are out of cases. So we are adjourned for this session.
judges: Ikuta, Woodlock, Bennett